1

2

3

4

5

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   RICHARD GONZALEZ,                          CASE NO. CV F 04-6706 REC LJO

12                  Plaintiff,          _____        **FINDINGS AND RECOMMENDATIONS ON**
                                                           **SOCIAL SECURITY COMPLAINT**
13          vs.                                            (Docs. 18, 19)

14   JO ANNE B. BARNHART,
     Commissioner of Social
15   Security,

16                  Defendant.
     _____/
17

18                            **INTRODUCTION**

19          Plaintiff Richard Gonzalez ("plaintiff") seeks this Court's review of an administrative law

20   judge's ("ALJ's") decision that plaintiff is not disabled and is not entitled to Supplemental Security

21   Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1382c.  Based

22   on review of the Administrative Record ("AR") and the papers of plaintiff and defendant Jo Anne B.

23   Barnhart, Commissioner of Social Security ("Commissioner"), this Court RECOMMENDS to DENY

24   plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI or to remand for further

25   proceedings.

26                            **BACKGROUND**

27                        **Personal Background**

28          Plaintiff is age 43 and has a 10th grade education and past relevant work as a peach sorter, plant

                                        1

1   laborer and cotton picker. (AR 19, 41, 44, 85, 90.)

2   **Administrative Proceedings**

3        On February 13, 2003, plaintiff filed his SSI application to claim disability since June 30, 2001

4 due to psychotic disorder and panic disorder. (AR 19, 75, 84.)  With its April 4, 2003 Notice of

5 Disapproved Claims, the Social Security Administration ("SSA") denied plaintiff's claim and

6 determined that plaintiff's condition is not expected to remain severe enough to prevent him from

7 working 12 continuous months. (AR 56.)  On May 30, 2003, plaintiff filed his Request for

8 Reconsideration to claim that he is unable to work. (AR 60.)  With its July 22, 2003 Notice of

9 Reconsideration, SSA denied plaintiff's claim and again determined that his condition is not severe

10 enough to prevent him to work. (AR 62.)

11        On August 19, 2003, plaintiff filed his Request for Hearing by Administrative Law Judge to

12 claim he is "totally disabled." (AR 66.)  On March 5, 2004, counsel was appointed for plaintiff.  (AR

13 23.)  After a March 11, 2004 hearing, the ALJ issued his March 24, 2004 decision to conclude that

14 plaintiff is able to perform his past relevant work. (AR 16, 19-22.)

15        Plaintiff submitted to SSA's Appeals Council his May 10, 2004 Request for Review of Hearing

16 Decision. (AR 9.)  On November 5, 2004, the Appeals Council denied plaintiff's request for review to

17 render the ALJ's March 24, 2004 decision as the Commissioner's final decision subject to this Court's

18 review. (AR 5.)

19   **Medical History And Records Review**

20        Plaintiff has been treated for mental problems that were diagnosed primarily as psychotic

21 disorder and anxiety disorder.

22   ***Kings View Counseling Service***

23        During January 15, 2003 to June 11, 2003, plaintiff received treatment from Kings View

24 Counseling Services for mental and substance abuse problems pursuant to a court probation order. (AR

25 139, 146.)  On January 15, 2003, plaintiff reported he had been hearing voices everyday for

26 approximately three or four years and that the voices worsened when other people were present. (AR

27 146.)  He also reported he had experienced nervousness around other people and insomnia. (AR 146.)

28 Plaintiff noted that his anxiety and fear of being around groups of people prevented his completion of

1   substance abuse programs. (AR 146.) Plaintiff reported he had not used methamphetamine in a year and

2   had stayed away from Avenal, where the people are with whom he did drugs. (AR 146.) Also, plaintiff

3   recalled having been treated at the clinic briefly, about a year prior and the treatment "really helped him."

4   (AR 147.) From January 16, 2003 to February 4, 2003 plaintiff attended four consultations and missed

5   two consultations, the focus of which was to prepare plaintiff for group therapy sessions and to resolve

6   a warrant for his arrest. (AR 141-145.)

7                           ***Emmanual J. Fantone, M.D., Treating Psychiatrist***

8          On February 28, 2003, Emmanual J. Fantone, M.D. ("Dr. Fantone"), performed an initial

9   psychiatric evaluation. (AR 139.) Plaintiff reported hearing voices, feeling anxiety in the presence of

10  other people, and depression. (AR 139.) Dr. Fantone noted that plaintiff had a history of criminal

11  behavior, multiple incarcerations, and a significant history of amphetamine use. (AR 139.) Plaintiff

12  stated his brother had died recently and he felt like a burden to his sister because she was supporting

13  him. (AR 139.) Dr. Fantone diagnosed psychotic disorder NOS (not otherwise specified), anxiety

14  disorder and amphetamine dependence by history in remission, and prescribed Zyprexa and Paxil. (AR

15  140.)

16         On April 17, 2003, plaintiff told Dr. Fantone he had not begun to take his medication because

17  his medical coverage had expired. (AR 137.) Dr. Fantone noted plaintiff was noncompliant with his

18  medication and noted the goal of treatment for plaintiff was to reduce his anxiety and auditory

19  hallucinations. (AR 137.) On April 18, 2003, plaintiff awaited approval of his medical coverage and

20  was given samples. (AR 136.) On May 28, 2003, Dr. Fantone reported that plaintiff suffered from an

21  anxiety-related disorder to cause inability to function outside his home but which did not affect his

22  ability to competently perform simple tasks of one- or two-step job instructions. (AR 131, 133-134.)

23  Dr. Fantone noted that the expected duration and prognosis of the plaintiff's impairment is guarded, that

24  he had treated plaintiff since February 2003, and that he was unable to assess and did not assess

25  plaintiff's ability to perform other work-related tasks. (AR 134.) Dr. Fantone noted that plaintiff's

26  response to treatment was still to be determined. (AR 134.)

27         On June 11, 2003, Dr. Fantone indicated that plaintiff was compliant with his medication, that

28  his psychosis, anxiety and depression had been reduced, and that the medications were effective. (AR

                                                    3

135.)  Dr. Fantone further noted that plaintiff's cognition was grossly intact and that plaintiff had no auditory hallucinations and "no active medical problems." (AR 135.)

### Michael Thompson, M.D., Treating Physician

In April and May 2003, on three separate occasions, plaintiff treated with Michael Thompson, M.D. ("Dr. Thompson"). (AR 124-128.)  On the April 3, 2003 visit, plaintiff described his chief complaint as "congestion," was diagnosed with hypertension, and was prescribed medication.  No other mental or physical conditions were indicated. (AR 128.)  Plaintiff also stated that he was on no other medications. (AR 128.)  On the May 5, 2003 visit, plaintiff was diagnosed with anxiety, listed his current medication as Paxil, and indicated that he understood the patient education regarding medication management. (AR 125.)

### Psychiatric Review Technique And Mental Capacity Assessment

On July 17, 2003, Archimedes Garcia, M.D. ("Dr. Garcia"), a state agency psychiatrist, reviewed plaintiff's medical records and completed a Psychiatric Review Technique to note that plaintiff's medically determinable impairments of psychotic disorder, depression, anxiety disorder, and amphetamine abuse, in remission.  (AR 154, 155, 157, 160.)  Dr. Garcia characterized plaintiff's limitations as mild restrictions on activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence and pace. (AR 162.) Further, Dr. Garcia indicated there was insufficient evidence of episodes of decompensation. (AR 162.)

Dr. Garcia completed a July 17, 2003 Mental Residual Functional Capacity Assessment to generally note that plaintiff was not significantly limited in understanding and memory, sustained concentration and persistence, social interaction and adaptation.  (AR 166, 167.)  Dr. Garcia further noted that plaintiff's projected mental residual functional capacity assessment is "no longer appropriate. Symptoms of depression/anxiety/psychosis are controlled."  (AR 168.)  Dr. Garcia concluded that plaintiff "retains the capacity to concentrate and attend, relate and adapt."  (AR 168.)

### Danilo Ching, M.D., Treating Psychiatrist

Plaintiff sought no further psychiatric treatment until he saw another psychiatrist Danilo Ching, M.D. ("Dr. Ching") on February 10, 2004.  (AR 201-202.) Plaintiff reported he had been hearing voices, felt depressed, had poor appetite and sleep, and lost libido. (AR 201.)  The notes reflect that at the time

4

plaintiff reported these symptoms, he had neither been compliant with his medications nor received treatment since October 2003. (AR 201.)  Dr. Ching reported plaintiff's depressed mood, good appearance, intact thought process, persecutory auditory and visual hallucinations, fair, intact memory, normal speech but at times circumstantial and vague, intact judgment, intact, fair insight, cooperative and pleasant behavior, and poor appetite. (AR 201.)  Dr. Ching assigned a Global Assessment Functioning (GAF) score of 50, noted plaintiff's "fair" prognosis, and prescribed Fluoxetine, Risperdal and Klonopin. (AR 202.) Dr. Ching further noted that plaintiff had no problems with person, time, place and situation orientation, that his intellectual functioning was average, that his attention span was intact, and that his general fund of knowledge was adequate. (AR 202.)  Dr. Ching provided a counseling referral and recommended that plaintiff attend therapy. (AR 202.)  Plaintiff reported he was already in counseling. (AR 202.)

Sometime on or near February 20, 2004, plaintiff voluntarily checked himself into a hospital and later transferred to Cypress Mental Health Center, due to hearing voices. (AR 38, 191-198, 200.)  He was released on February 27, 2004. (AR 198.)  On March 3, 2004, plaintiff saw Dr. Ching, who confirmed plaintiff's psychosis and depression. (AR 200.)  Plaintiff stated that he felt better since his discharge from the hospital and admitted he had not been taking his medication. (AR 200.)  Dr. Ching noted that plaintiff had resumed taking his medications and that they were effective. (AR 200.)  Dr. Ching found plaintiff had no side effects from his medications and "his hallucinations had decreased significantly." (AR 200.)  Dr. Ching observed that plaintiff's thought processes were organized, his memory adequate, and his judgment and insight were intact. (AR 200.)

### *Medications*

Plaintiff's medications have included Metformin HCL, Forflapril Mateate, Fluoxetine, Risperdal, Clonazepam, Hydrochlorothiazide, Paxil, and Zyprexa. (AR 122, 124, 138, 140, 190.)

### **Plaintiff's Activities And Testimony**

### *Plaintiff's Questionnaires And Statements*

Plaintiff completed a March 4, 2003 Daily Activity Questionnaire.  (AR 98.)  As to his living situation and daily routine, plaintiff noted that he lives in an apartment with his sister and her children and watches television all day in his sister's bedroom. (AR 98.)  Plaintiff experiences difficulty sleeping

1  at night and tiredness in the morning and takes naps during the day. (AR 98.)  As to daily chores,

2  plaintiff does not cook but makes sandwiches, cleans his bedroom, and does his laundry.  (AR 99.) At

3  times plaintiff's fear of people interferes to require his sister to move the clothes into the dryer. (AR 99.)

4        For social interaction, plaintiff reported that he leaves the apartment only for medical or

5  counseling appointments and travels either by bicycle or foot to avoid crowds on the bus.  (AR 100.)

6  At time, plaintiff has strong panic feelings to cause him to miss doctor appointments. (AR 100.)  At

7  home, he does not answer the phone and cannot remember whether his social activities have changed

8  since his impairments began. (AR 101.)

9        As to personal information, plaintiff noted that he is able to remember what he watches on

10 television but cannot concentrate on verbal instructions from someone because of nervousness. (AR 100,

11 102.)  Plaintiff no longer reads books, has difficulty concentrating on completing forms because of

12 difficulty spelling but is able to follow written instructions. (AR 100, 102.)

13       Alice Gonzalez, plaintiff's sister, completed a March 3, 2003 Daily Activities Questionnaire

14 (Third Party Information) to note that plaintiff lives at home with her family. (AR 108.)  Plaintiff spends

15 the day sleeping and watching television, sometimes without volume, in the bedroom. (AR 108, 112.)

16 She is unsure whether plaintiff has difficulty sleeping at night but sometimes hears him sneezing a lot.

17 (AR 109.)  Plaintiff has no difficulties caring for his personal needs. (AR 109.)  Plaintiff used to iron

18 his clothes and no longer dresses well. (AR 109.)  Plaintiff does not cook and he would not eat unless

19 she cooked for him. (AR 109.)  Plaintiff does not shop and has no bills to pay. (AR 110.)  Plaintiff

20 sometimes does his laundry and does not need help. (AR 110.)  Plaintiff never goes outside and needs

21 reminding of doctors appointments. (AR 110.)  Plaintiff used to go places but now he never goes out.

22 (AR 111, 112.)  Plaintiff makes his bed every morning and never needs help finishing chores. (AR 112.)

23 At times, plaintiff asks his sister to whom she is talking  when she is not talking to anyone, looks out

24 the window thinking other tenants are talking about him, and becomes angry when she asks him what

25 is wrong. (AR 112, 113.)

26                     ***Plaintiff's ALJ Hearing Testimony***

27       At the March 11, 2004 ALJ hearing, plaintiff testified that he has a 10th grade education and has

28 been free of drugs for the past two years. (AR 41, 42.)  Plaintiff claimed that he could no longer work

6

1  because he heard voices up to four times a week and was paranoid, but that his medication helped
2  without adding problems. (AR 42.)  Plaintiff lives with his niece, watches television three to four hours
3  a day, sits on the back patio for long periods of time, neither shops nor drives, and only leaves the house
4  for medical appointments. (AR 42-43.)

5  ***Vocational Expert Testimony***

6  Vocation expert Judith Najarian ("Ms. Najarian") testified at the March 11, 2004 hearing that
7  plaintiff's past relevant occupations of peach sorter, plant laborer, and cotton picker were unskilled light,
8  medium and heavy work, respectively. (AR 44.)

9  As a hypothetical, the ALJ asked Ms. Najarian to assume a person who has: (1) plaintiff's
10 education and work background; (2) mild restrictions on daily living; (3) mild difficulty maintaining
11 social functioning; (4) mild difficulty maintaining concentration, persistence and pace; and (5)
12 moderately limited ability to understand and remember detailed instructions and to carry out detailed
13 instructions. (AR 44-45.) Ms. Najarian testified that such hypothetical person would be able to perform
14 all of plaintiff's past relevant work. (AR 44-45.)

15 **The ALJ's Findings**

16 In his March 24, 2004 decision, the ALJ identified the primary issue as whether plaintiff is under
17 a disability. (AR 19.)  In concluding plaintiff is not disabled and thus not eligible for SSI (AR 22),the
18 ALJ found:

19     1.    The medical evidence establishes that plaintiff has a psychotic disorder and an anxiety
20         disorder but not an impairment or combination of impairments listed in or medically
21         equal to an impairment in the Listing of Impairments, 20 C.F.R. Part 404, subpart P,
22         Appendix 1 ("Listing of Impairments").

23     2.    Plaintiff's subjective complaints and alleged functional limitations are not as severe as
24         asserted and are only partially credible.

25     3.    Plaintiff's residual functional capacity is characterized by mild restrictions on daily living
26         and maintaining social functioning, concentration, persistence and pace, and moderate
27         limitations on understanding and carrying out detailed instructions.

28     4.    The plaintiff's past relevant work as plant laborer, peach sorter and cotton picker did not

1    require the performance of the work-related activities precluded by the above

2    limitation(s).

3    5.    The claimant's impairments do not prevent the claimant from performing his past

4    relevant work.

5    7.    The claimant was not under a "disability" as defined in the Social Security Act, at any

6    time  through the date of the decision. 20 C.F.R. §§ 416.920(e). (AR 21.)

**DISCUSSION**

**Standard Of Review**

Congress has provided limited judicial review of a Commissioner's decision made through an ALJ. *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings).[1]  Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420 (1971), but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401, 91 S.Ct. 1420; *Sandgathe*, 108 F.3d at 980.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion.  *Sandgathe*, 108 F.3d at 980; *Jones,* 760 F.2d at 995.  If there is substantial evidence to support the administrative finding, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th

---

[1]    "The district court properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

8

1   Cir. 1999).

2        This Court reviews the ALJ's decision pursuant to 42 U.S.C. § 405(g) to determine whether it

3   is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

4   whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9ᵗʰ Cir. 1988).  "A decision of the ALJ will not be

5   reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9ᵗʰ Cir. 2005).

6        Plaintiff bears the burden to prove that he is disabled which requires presentation of "complete

7   and detailed objective medical reports of [his] condition from licensed medical professionals." *Meanel*

8   *v. Apfel*, 172 F.3d 1111, 1113 (9ᵗʰ Cir. 1999) (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

9   Plaintiff must furnish medical and other evidence about plaintiff's medical impairments.  20 C.F.R. §§

10  404.1512(a), 416.912(a); ("[Y]ou must bring to our attention everything that shows that you are blind

11  or disabled."); 20 C.F.R. §§ 404.1514, 416.914 ("We need specific medical evidence to determine

12  whether you are disabled or blind.  You are responsible for providing that evidence.")

13        Here, plaintiff claims disability since June 30, 2001 primarily due to psychotic disorder and

14  panic disorder. (AR 74-76, 84.)  As discussed below, this Court finds that the ALJ properly evaluated

15  the evidence and that his conclusion that plaintiff is not disabled is based on proper legal standards and

16  substantial evidence.

17        With the above standards in mind, this Court turns to plaintiff's criticism of the ALJ's March

18  24, 2004 decision.

19                              **New Evidence**

20        Plaintiff contends the ALJ did not properly consider all medical evidence and submitted with his

21  opening brief additional 2004 records from Mircea Truta, M.D. ("Dr. Truta"), which reflect plaintiff's

22  continuing symptoms of anxiety and auditory hallucinations.  The Commissioner notes that the new

23  records arose after the ALJ's March 24, 2004 decision.

24        A remand is appropriate under 42 U.S.C. § 405(g) "where the new evidence is material and there

25  is good cause for the failure to incorporate such evidence in the record in a prior proceeding." *Booz v.*

26  *Secretary of Health and Human Services*, 734 F.2d 1378, 1380 (9ᵗʰ Cir. 1984); *Burton v. Heckler*, 724

27  F.2d 1415, 1417 (9ᵗʰ Cir. 1984).  In 1980, Congress amended 42 U.S.C. § 405(g) to add a materiality

28  requirement "at least in part to limit the court's ability to remand cases for consideration of new

1    evidence." *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982) (citing *Carter v. Schweiker*, 649 F.2d

2    937, 942 (2nd Cir. 1981)).

3        "To meet the materiality requirement, the new evidence offered must bear directly and

4    substantially on the matter in dispute." *Burton*, 724 F.2d at 1417. "[E]vidence is sufficiently material

5    to require a remand, 'only where there is a *reasonable possibility* that the new evidence would have

6    changed the outcome of the [Commissioner's] determination had it been before him.'" *Booz*, 734 F.2d

7    at 1380 (quoting and adopting *Dorsey v. Heckler*, 702 F.2d 597, 604-605 (5th Cir. 1983)) (italics in

8    original). "The good cause requirement often is liberally applied where . . . there is no indication that

9    a remand for consideration of new evidence will result in prejudice to the [Commissioner]." *Burton*,

10   724 F.2d at 1417-1418.

11       Plaintiff fails to explain how the more recent records are material and their potential effect on

12   the ALJ's decision.  This  Court is not in a position to speculate as to the materiality of the new

13   evidence.  If the evidence indicates deterioration after the hearing, it would be material to a new

14   application and not probative of plaintiff's condition at the time of the March 11, 2004 hearing.  *See*

15   *Sanchez*, 812 F.2d at 512.  Plaintiff fails to demonstrate ALJ error to consider all medical evidence.

16                                   **Development Of Record**

17       Plaintiff faults the ALJ for failing to develop the mental health record.  The Commissioner

18   responds that the ALJ did not need to develop further the mental health record in that all required

19   information was readily available from plaintiff's medical sources, which indicated that plaintiff

20   responded well to medication and that his symptoms were controlled when he complied with the

21   medication regimen.

22       "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence

23   or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*,

24   276 F.3d 453, 460 (9th Cir. 2001).  Here, there is no suggestion of an ambiguous or inadequate record.

25   The ALJ noted Dr. Fantone's determination that plaintiff was competent to perform simple repetitive

26   tasks. (AR 20.)  The ALJ properly reviewed Dr. Ching's psychiatric evaluation, diagnosis of psychotic

27   disorder and  depressive disorder, and assessed GAF score of 50 taken when the plaintiff was

28   noncompliant with his medication.  (AR 20.)  The ALJ adequately discounted the GAF score in light

1   of Dr. Ching's findings that plaintiff's "mental status examination was essentially normal" and there was

2   "'no problem' in his cognitive functioning areas." (AR 20.)  The ALJ properly reviewed the testimony

3   of Ms. Najarian, the vocational expert, who opined that plaintiff was able to perform his past relevant

4   work as a plant laborer (unskilled, medium), peach sorter (unskilled, light), and cotton picker (unskilled,

5   heavy). (AR 20.)  Plaintiff fails to demonstrate grounds to further develop the mental health record.

6   **Listing Of Impairments**

7   Plaintiff argues that plaintiff's condition satisfies section 12.05 (affective disorders) of the Listing

8   of Impairments.  The Commissioner contends that plaintiff failed to demonstrate he met or equaled a

9   an impairment in the Listing of Impairments.

10   SSA regulations provide: "If you do not have any impairment or combination of impairments

11   which significantly limits your physical or mental ability to do basic work activities, we will find that

12   you do not have a severe impairment and are, therefore, not disabled." 20 C.F.R. §§ 404.1520(c),

13   416.920(c). "Basic work activities" are the "abilities and aptitudes necessary to do most jobs," including

14   "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling" as well as

15   "[u]nderstanding, carrying out, and remembering simple instructions." 20 C.F.R. §§ 404.1521(b)(1),

16   (3), 416.921(b)(1), (3).  At step two of the five-step disability analysis, "the ALJ must consider the

17   combined effect of all of the claimant's impairments on [his] ability to function, and without regard to

18   whether each alone was sufficiently severe." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

19   Such inquiry "is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at

20   1290 (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-154, 107 S.Ct. 2287, 2297-2298 (1987)).

21   The purpose of the Listing of Impairments is to describe impairments "severe enough to prevent

22   a person from doing any gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885 (quoting

23   Social Security Ruling (SSR) 83-19, Dept. of Health and Human Services Rulings 90 (Jan. 1983)).  If

24   a claimant meets or equals a listed impairment, he/she is disabled. *Tackett*, 180 F.3d at 1099.

25   The United States Supreme Court has explained application of the Listing of Impairments:

26   The listings . . . are descriptions of various physical and mental illnesses and
    abnormalities, most of which are categorized by the body system they affect.  Each

27   impairment is defined in terms of several specific medical signs, symptoms, or laboratory
    test results.  For a claimant to show that his impairment matches a listing, it must meet

28   *all* of the specified medical criteria.  An impairment that manifests only some of those

11

> criteria, no matter how severely, does not qualify. . . . "The level of severity in any particular listing section is depicted by the *given set* of findings and not by the degree of severity of any single medical finding – no matter to what extent that finding may exceed the listed value."
>
> . . .
>
> The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity."

*Sullivan*, 493 U.S. at 530-531, 110 S.Ct. 885 (italics in original; citations omitted).

"While the Listing of Impairments does describe conditions that are generally considered severe enough to prevent a person from doing any gainful activity, an ALJ should not consider a claimant's 'impairment to be one listed in Appendix 1 solely because it has the diagnosis of a listed impairment. It must also have the **findings** shown in the Listing of that impairment.'" *Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990) (quoting 20 C.F.R. § 404.1525(d)); *Key v. Heckler*, 754 F.2d 1545, 1549-1550 (9th Cir. 1985)) (bold added).

Plaintiff bears the burden of proof to demonstrate that he has an impairment that meets of equals one of the listed impairments. *Tackett*, 180 F.3d at 1098. To "meet" a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his/her claim. *Tackett*, 180 F.3d at 1099. To "equal" a listed impairment, a claimant must establish symptoms, signs and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment. *Tackett*, 180 F.3d at 1099. Medical equivalence must be based on medical findings in the evidence supported by medically acceptable clinical and laboratory diagnostic techniques. *Tackett*, 180 F.3d at 1100; 20 C.F.R. §§ 404.1526(b) and 416.926(b).

As a matter of law, the ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments," in particular when the ALJ's evaluation of the evidence is an adequate statement of the "foundations on which the ultimate factual conclusions are based." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683; *see Lewis v.*

1    *Apfel*, 236 F.3d 503, 514 (9th Cir. 2001).

2        In the case at hand, the ALJ correctly concluded that the "medical evidence establishes that the

3    claimant has a psychotic disorder and an anxiety disorder, but that he does not have an impairment or

4    combination of impairments listed in or medically equal to one listed in" the Listing of Impairments.

5    The ALJ thoroughly evaluated the medical evidence. (AR 19-20.) Plaintiff points to insufficient medical

6    signs, symptoms or test results to demonstrate that his alleged impairments meet or equal section 12.04

7    of the Listing of Impairments.  Plaintiff directs this Court's attention to no findings of an impairment

8    for the requirements of either parts B or C of section 12.04.  Plaintiff comes no where close to meeting

9    his burden that his condition meets or equals a Listing of Impairments.

10                              **Credibility Evaluation**

11        Plaintiff challenges the ALJ's evaluation of his credibility and argues that the ALJ "failed to give

12    adequate reasons for rejecting credibility."  The Commissioner responds that the ALJ provided "specific

13    findings supported by substantial evidence in the record, [therefore] the ALJ's credibility determination

14    should not be second guessed."

15        "Credibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th

16    Cir. 1989); *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).  "An ALJ cannot be required to believe

17    every allegation of disabling pain." *Fair*, 885 F.2d at 603. An ALJ "may disregard unsupported, self-

18    serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir.

19    1995).

20        A claimant bears an initial burden to "produce objective medical evidence of underlying

21    'impairment,' and must show that the impairment, or a combination of impairments, 'could reasonably

22    be expected to produce pain or other symptoms.'" *Baston v. Commissioner of Social Security Admin.*,

23    359 F.3d 1190, 1196 (9th Cir. 2004) (quoting *Smolen* 80 F.3d at 1281.)  If a claimant satisfies such initial

24    burden and "if the ALJ's credibility analysis of the claimant's testimony shows no malingering, then the

25    ALJ may reject the claimant's testimony about severity of symptoms with 'specific findings stating clear

26    and convincing reasons for doing so.'" *Baston*, 359 F.3d at 1196 (quoting *Smolen*, 80 F.3d at 1284.)  "If

27    the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable,

28    the ALJ must make a credibility determination with findings sufficiently specific to permit the court to

1  conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d

2  947, 958 (9th Cir. 2002).

3        If an ALJ's credibility finding is supported by substantial evidence in the record, a reviewing

4  court may not engage in second-guessing. *Thomas*, 278 F.3d at 959. A reviewing court will not reverse

5  an ALJ's credibility determinations "based on contradictory or ambiguous evidence." *Johnson v.*

6  *Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (citing *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)).

7  "So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may

8  discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character

9  evidence." *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). Moreover, "the ALJ is entitled to

10  draw inferences 'logically flowing from the evidence.'" *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir.

11  1996) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

12        In *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), the Ninth Circuit commented:

13  In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,
   inconsistencies either in his testimony or between his testimony and his conduct, his
14  daily activities, his work record, and testimony from physicians and third parties
   concerning the nature, severity, and effect of the symptoms of which he complains.
15  *Smolen*, 80 F.3d at 1284; *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (quoting
   *Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995)); 20 C.F.R. § 404.1529(c). An
16  ALJ's finding that a claimant generally lacked credibility is permissible basis to reject
   excess pain testimony.

17

18  *See also* S.S.R. 96-7p.[2]

19        After detailing plaintiff's medical treatment and testimony, the ALJ thoroughly addressed

20  plaintiff's credibility:

21  The claimant has impairments that could reasonably be expected to produce some of the
   symptoms he alleges, but the degree of limitations he alleges is not supported by
22  objective medical evidence and is not entirely credible when evaluated under Social
   Security Ruling 96-7p.
23
   The medical evidence shows that since January 2003 the claimant has sought intermittent
24

25  [2]     Social Security Ruling 96-7p sets out factors to assess a claimant's credibility: (1) claimant's daily
   activities; (2) location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate
26  and aggravate the symptoms; (4) type, dosage, effectiveness, and side effects of any medication the claimant takes or has
   taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief
27  of pain or other symptoms; (6) measures other than treatment the individual uses or has used to relieve pain or other
   symptoms (e.g., lying flat on his or her back, standing 15 to 20 minutes every hour, or sleeping on a board); and (7) any other
28  factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

treatment for mental problems that have been diagnosed primarily as a psychotic disorder and an anxiety disorder and treated with Zyprexa and Paxil and individual anxiety skills rehabilitation sessions (Exhibit 1F; 2F; and 7F). Self reported symptoms have included auditory hallucinations, paranoid ideations, insomnia, irritability, difficulty concentrating and fear of social situations (Exhibit 2F, p. 20), but the claimant also has been noncompliant with his medication (Exhibit 2F, p. 9). In May 2003, treating psychiatrist Dr. Fantone reported that the claimant was competent to perform simple repetitive tasks, but he was unable to test the claimant's abilities in other work-related tasks because of the short time he had been treating him (Exhibit 2F, p. 6).

A February 10, 2004 psychiatric evaluation by Dr. Ching contained diagnoses of a psychotic disorder and a depressive disorder and a Global Assessment of Functioning rated at 50 (Exhibit 7F, pp. 3-4). However, the mental status examination was essentially normal and claimant had average ability or "no problem" in his cognitive functioning areas. The following month, Dr. Ching reported that the claimant had recently self-referred for hospitalization for 3 days because he was 'hearing voices', but the symptoms were now stable (Exhibit 7F, p. 2). The claimant admitted that he had been noncompliant with his medications.

The state agency medical consultants concluded that the claimant retains the residual functional capacity to perform unskilled work at all exertional levels (Exhibit 3F).

The claimant testified that he hears voices 3 to 4 times a week and feels paranoid because he thinks people are talking about him. He has no side effects from his medications. He lives with his niece and allegedly does nothing all day but watch TV. He said he leaves the house for doctors appointments only and does no shopping. Weighing all relevant factors, the Administrative law Judge finds that the claimants impairments are not as limiting as he alleges. (AR 20.)

This Court is not in a position to second guess the ALJ's credibility determinations in that the ALJ made sufficiently specific findings to substantiate that the ALJ did not arbitrarily discredit plaintiff. The ALJ detailed the objective evidence to establish no disability and emphasized that no physician found plaintiff incapable to follow simple instructions. Plaintiff has failed to demonstrate an impairment or combination of impairments which could reasonably be expected to produce limitations to the degree which he claims. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (objective medical evidence "is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") Nonetheless, the ALJ provided specific findings and clear and convincing reasons to discredit plaintiff. The ALJ pointed to Dr. Fantone's conclusion that plaintiff is capable of performing simple repetitive tasks. (AR 20.) *See Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (physician opinion that claimant could perform sedentary work is a specific reason to discredit excessive pain testimony). The ALJ pointed to the mental status examination by Dr. Ching which stated plaintiff was "essentially normal" and had "average ability or had no problem in cognitive functioning areas." (AR 20.) *See*

*Drouin v. Sullivan*, 966 F.2d 1255, 1258-1259 (9th Cir. 1991) (medical records indicated physical impairments are not necessarily associated with pain).  The ALJ noted that Dr. Ching also determined plaintiff's symptoms had "decreased significantly" after his hospitalization and that his condition was stable. (AR 200.)  The ALJ further noted the record showed that before plaintiff's hospitalization, he had been noncompliant with his medication. (AR 200.)  The ALJ also noted that plaintiff experienced no side effects from medication. (AR 200.)  Plaintiff fails to substantiate his complaint that the ALJ failed "to fully report the testimony from the hearing and go over each symptom."

The record reveals further grounds to question plaintiff's credibility.  As of January 15, 2003, plaintiff reported having seen Dr. Fantone about a year ago and it "really helped him." (AR 147.)  As of February 28, 2003, Dr. Fantone noted he had seen plaintiff last year but that the plaintiff never followed up. (AR 139.)  On June 11, 2003, Dr. Fantone indicated that plaintiff's was compliant with his medication, that his psychosis, anxiety and depression had been reduced by the medications, and that the medications were effective. (AR 135.) More specifically, Dr. Fantone noted there was "no report of auditory hallucinations for [the] past two weeks." (AR 135.)  Also, on a February 10, 2004 visit to Dr. Ching, plaintiff stated that he had not received any treatment since October 2003. (AR 201.)  Dr. Ching, during that visit, provided a counseling referral and recommended plaintiff attend therapy, to which the plaintiff responded that he was already in counseling. (AR 202.)  Plaintiff later admitted that he had not taken his medication. (AR 200.)  After his hospitalization discharge, plaintiff stated he felt better. (AR 200.)  Dr. Ching noted that plaintiff had resumed taking his medications, which were effective. (AR 200.)  Dr. Ching found plaintiff had no side effects from his medications and that "his hallucinations had decreased significantly." (AR 200.)

Substantial evidence supports the ALJ's specific findings on plaintiff's credibility to preclude this Court to second guess the ALJ.  Plaintiff fails to demonstrate error in the ALJ's evaluation of plaintiff's credibility.

**Lay Testimony**

Plaintiff, in a scattered approach, questions the ALJ's lack of reference to the comments of plaintiff's sister, Alice Gonzalez, in her March 6, 2003 Daily Activities Questionnaire (Third Party Information).  The Commissioner responds that the ALJ need not discuss each piece of evidence and

1    thus committed no error as to the comments of plaintiff's sister.

2          "The circuit courts have consistently recognized the need for full and detailed findings of facts

3    essential to the [ALJ]'s conclusion." *Lewin v. Schwieker*, 654 F.2d 631, 634 (9th Cir. 1981).  However,

4    the ALJ "need not discuss all evidence  presented to [him]. Rather, [he] must explain why 'significant

5    probative evidence has been rejected.'" *See Vincent on behalf of Vincent v. Heckler,* 739 F.2d 1393,

6    1395 (9th Cir. 1984) (no ALJ error to disregard lay witness testimony because lay witness determinations

7    are not the equivalent of medically acceptable diagnostic techniques) (quoting *Cotter v. Harris*, 642 F.2d

8    700, 706 (3rd Cir. 1981)).  However, "[l]ay testimony as to a claimant's *symptoms* is competent evidence

9    which the [ALJ] must take into account, unless he expressly determines to disregard such testimony, in

10   which case 'he must give reasons that are germane to each witness.'" *Van Nguyen v. Chater*, 100 F.3d

11   1462 (9th Cir. 1996) (ALJ erred when he failed to include in hypothetical the physical manifestations

12   described by witnesses and to expressly reject the testimony for legitimate reasons) (quoting *Dodrill v.*

13   *Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

14         Here, the ALJ neither expressly determined to disregard the observations of plaintiff's sister nor

15   excluded from his hypothetical the physical manifestations she had described.  The ALJ, in determining

16   the plaintiff's residual functional capacity, considered the "subjective complaints" and determined the

17   plaintiff "has impairments that could reasonably be expected to produce some of the symptoms he

18   alleges, but the degree of limitation he alleges is not supported by the objective medical evidence." (AR

19   20.)  The ALJ considered the medical evidence that clearly marked a relationship between the plaintiff's

20   noncompliance with his medication regimen and his symptoms worsening.  The ALJ also considered

21   that when plaintiff complied with the medication regimen, the examining doctors, both Dr. Ching and

22   Dr. Fantone, noted the symptoms decreased and plaintiffs condition stabilized. (AR 20.)  Further, the

23   record reveals the comments of plaintiff's sister were neither significant, probative nor essential to the

24   ALJ's decision.  She noted that she reminded plaintiff "that he has a doctor's appointment" (AR110) and

25   that she was not aware of the plaintiff having difficulties concentrating or remembering. (AR 112.)

26   When responding to whether plaintiff had trouble finishing a job or following instructions, she noted

27   that "he make[s] his bed every morning[,] but that [is] all." (AR 112.)  In addition to its lack of

28   significance or probative or essential value, the comments of plaintiff's sister contradict plaintiff's

1  testimony in that she noted that "sometimes he does his own laundry" and that he never needs help to

2  complete the chore. (AR110.)  Plaintiff points to no error regarding the comments of plaintiff's sister.

3  ### CONCLUSION AND RECOMMENDATION

4  For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ

5  properly concluded plaintiff is not disabled.  This Court further finds the ALJ's decision is supported

6  by substantial evidence in the record as a whole and based on proper legal standards.  Accordingly, this

7  Court RECOMMENDS to:

8      1.        DENY plaintiff's request to reverse the Commissioner's decision to deny plaintiff SSI

9                    or to remand for further proceedings;

10      2.        DIRECT this Court's clerk to enter judgment in favor of defendant Jo Anne B. Barnhart,

11                    Commissioner of Social Security, and against plaintiff Richard Gonzalez and to close

12                    this action.

13  These findings and recommendations are submitted to the district judge assigned to this action,

14  pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304.  No later than March 10, 2006,

15  any party may file written objections to these findings and recommendations with the Court and serve

16  a copy on all parties and the magistrate judge and otherwise in compliance with this Court's Local Rule

17  72-304(b).  Such a document should be captioned "Objections to Magistrate Judge's Findings and

18  Recommendations."  Responses to objections shall be filed and served no later than March 17, 2006 and

19  otherwise in compliance with this Court's Local Rule 72-304(d).  A copy of the responses shall be

20  served on the magistrate judge.  The district judge will review the magistrate judge's findings and

21  recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file

22  objections within the specified time may waive the right to appeal the district judge's order.  *Martinez*

23  *v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

24  IT IS SO ORDERED.

25  **Dated:   February 23, 2006**           **/s/ Lawrence J. O'Neill**
   66h44d                   UNITED STATES MAGISTRATE JUDGE

26

27

28